14 CV       6601



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHARLES J. PIVEN and          :
BROWER PIVEN, A PROFESSIONAL  :      **Case No.**
CORPORATION                   :
                              :
        Plaintiffs,           :
                              :
    v.                        :      **COMPLAINT**
                              :
HARWOOD FEFFER LLP and        :
ROBERT I. HARWOOD             :
                              :
        Defendants.           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Plaintiffs Charles J. Piven ("Piven") and Brower Piven, A Professional Corporation ("Brower Piven"), by and through their undersigned counsel, for their complaint against Defendants Harwood Feffer LLP and Robert I. Harwood ("Defendants"), complain and allege as follows:

      1.    This action arises out of Defendants' breach of a referral and fee sharing agreement between the parties in connection with fees paid to and received by Defendants in connection with *In re Initial Public Offering Securities Litigation*, No. 21 MC 92 (SAS) ("IPO Litigation"). The IPO Litigation asserted violations of the securities laws in connection with the initial public offerings of shares of 309 companies. The arrangement controlling the obligations of Defendants to Plaintiffs as alleged herein was agreed to between Plaintiffs and Defendants after the Piven Firm was formed in 1997.[1] The client referrals in the IPO Litigation were made

---

[1] Law Offices Of Charles J. Piven, P.A. a Maryland professional association, a successor to Piven's sole proprietorship law firm, was formed in 1997 and, as it existed before the Piven Firm before it changed its name to Brower Piven in or about June 2006, shall herein be referred to as the "Piven Firm." While the Piven Firm changed its name to Brower Piven, A Professional Association on June 19, 2006, which entity changed its name to Brower Piven, A Professional Corporation on July 27, 2006, wherever used herein, "Brower Piven" shall refer to the Plaintiff law firm after the Piven Firm changed its name in June 2006. Piven was the sole owner of the Piven Firm. In or about June 2006, David Brower ("Brower") joined

in 2001 beginning in January 2001, and Defendants' acceptance of those referrals obligated Defendants to pay to Plaintiffs referral fees as herein alleged.  Each referral of a client by Plaintiffs to Defendants in 2001 in the IPO Litigation was confirmed in writing, and each client referred was the first client on whose behalf Defendants filed a complaint in connection with the company whose initial public offering was the subject of such complaint.  Plaintiffs became entitled to be paid the referral fees being sued for hereunder in or about January or February 2012 when, upon information and belief, Defendants received and/or became entitled to receive attorneys' fees in connection with the IPO Litigation.  At all relevant times, regarding referral of clients by Plaintiffs to Defendants in the IPO Litigation, the parties agreed as follows: (i) Plaintiffs agreed, at their option, to refer clients to Defendants; and (ii) Defendants agreed, in the event a referral was accepted, to pay Plaintiffs a referral fee calculated as a percentage of gross attorneys' fees net of expenses received by Defendants in connection with the matter for which the client or clients were referred.  The personal involvement of Robert I. Harwood (senior partner of Harwood Feffer LLP) in the representation of a referred client was a material factor in Plaintiffs' referral of clients to Defendants in the IPO litigation.  Defendants have breached the parties' agreement in connection with the referral by Plaintiffs of clients to Defendants in the IPO Litigation and attorneys' fees received by Defendants in connection therewith by, *inter alia*, failing to pay Plaintiffs referral fees due pursuant to the agreement, by refusing to account to Plaintiffs for the monies held by Defendants that is the property of Plaintiffs, and, after acknowledging that Plaintiffs were owed money by and entitled to monies from Defendants for

---

what was then known as the Piven Firm, and the firm changed its name to Brower Piven.  Piven and Brower are principals of Brower Piven.  Despite that any payment from Defendants as a result of the client referrals that are the subject of this action would as a matter of course be paid from an account controlled by Harwood to Brower Piven, Piven is the sole person entitled to receive the monies due by Defendants to Plaintiffs.

referral fees in connection with the IPO litigation, by changing their position and subsequently claiming in bad faith that no such monies are owed.

2.      Plaintiffs seek compensatory and punitive damages with pre- and post-judgment interest and a declaration by this Court that the client referral and fee sharing agreement between the parties should be applied as claimed by Plaintiffs as it relates to the claims asserted herein.

## PARTIES

3.      Plaintiff Piven is a Maryland resident and is a practicing attorney and a member in good standing of the Maryland Bar.

4.      Plaintiff Brower Piven, a Maryland professional corporation, is the entity, when known as the Piven Firm, that entered into the client referral and fee-sharing arrangement which gives rise to the claims set forth herein.   Brower Piven's principal place of business is in Stevenson, Maryland.   Brower Piven's operating bank account, escrow bank account, payroll account and administration (including for Brower Piven employees located outside of Maryland), bookkeeping, accounting services, insurance services, firm administration, firm invoicing, firm bill payment (including invoices relating to maintenance of the firm's New York office), computer servers and firm website are all conducted out of, maintained in, generated in, contracted for and/or provided in Maryland.   When the Piven Firm changed its name to Brower Piven, Brower Piven assigned to Piven all right, title and interest in and to all monies due by Defendants to Plaintiffs in connection with referral of clients in cases included in the IPO Litigation such that Piven is the real party in interest regarding the claims asserted herein.

5.      Defendant Harwood Feffer LLP (formerly known as Wechsler Harwood Halebian & Feffer LLP until August 29, 2002 and as Wechsler Harwood LLP until December 27, 2006; "HF") is a New York domestic registered limited liability partnership initially registered under a

3

different name on or about November 29, 1994 with its current principal place of business at 488 Madison Avenue, 8th Floor, New York, New York 10022. HF is a law firm.

6.     Defendant Robert I. Harwood is an individual conducting business at 488 Madison Avenue, 8th Floor, New York, New York 10022, a resident of New York, and at all times relevant hereto has been and remains a member of HF.  Robert I. Harwood, a practicing attorney authorized to practice law in the State of New York, is the senior partner of HF and, upon information and belief, had/has a substantial personal financial interest in all income received by HF in connection with the IPO Litigation and had/has a direct personal financial motive not to pay Plaintiffs the referral fees owed by Defendants to Plaintiffs in connection with Plaintiffs referral of clients to Defendants in the IPO Litigation.  At all times relevant hereto with regard to the matters alleged herein, Robert I. Harwood was acting in his capacity as an attorney for his own benefit as well as for the benefit of HF.  HF (including as it was known during various times relevant hereto) and Robert I. Harwood are herein be referred to collectively as "Defendants" or "Harwood."

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy substantially exceeds $75,000.00, exclusive of interest and costs. Plaintiffs' claim for declaratory judgment is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, as amended.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events and/or omissions giving rise to Plaintiffs' claims occurred in this judicial district, where Defendants maintain their business and law practice.  In addition, all or a

substantial part of the property that is the subject of this action is situated in this judicial district, and each Defendant is subject to personal jurisdiction in this judicial district at the time this action is commenced.

## FACTUAL BACKGROUND

### The Referral and Fee Sharing Agreement

9.      The law practices of Plaintiffs and Defendants include contingency-fee litigation for plaintiffs including class action cases arising out of violations of the federal securities laws and other cases involving investors in securities.

10.      In May 1990, Piven formed his own law firm as a sole proprietorship.  In or about February 1997, Piven formed the Piven Firm.  After Brower joined the Piven Firm in June 2006, the Piven Firm became known as Brower Piven.

11.      After the Piven Firm was formed, Plaintiffs communicated with Harwood regarding Piven's and the Piven Firm's possible future referral of clients to Harwood primarily for cases brought under the Private Securities Litigation Reform Act of 1995 ("PSLRA").  At that time it was agreed between the parties hereto that in the event Piven and/or the Piven Firm referred clients to Harwood, including for PSLRA, merger and acquisition, ERISA and/or derivative cases, Harwood would pay to Piven and/or the Piven Firm a fixed percentage of HF's gross fees (net of expenses) received by HF in connection with the representation.

12.      The key terms of Piven's and/or the Piven Firm's agreement with Harwood regarding their joint representation of clients who had retained Piven and/or the Piven Firm, including the joint representation of clients in various of the cases included in the IPO Litigation, are as follows:

- at their option, Harwood would contact Piven to ask whether Piven and/or the Piven Firm had a client in a particular matter, or, at his option, Piven would contact Harwood to see if Harwood was interested in accepting referral of a client interested in pursuing particular litigation;

- Piven would investigate the particular matter and evaluate a potential claimant who had contacted the Piven Firm and the circumstances of the case to determine whether the prospective client would be a suitable plaintiff, whether as a prospective class representative or otherwise, and, in Piven's judgment, whether it was appropriate to refer the client to Harwood;

- once Piven and/or the Piven Firm was/were retained by a client to investigate a case and/or file a lawsuit, and once Piven determined in his judgment whether to refer the client to Harwood, if Harwood accepted referral from Piven and/or the Piven Firm of the client and filed the case on behalf of the client, in the event the case was successful and Harwood was paid attorneys' fees in connection therewith, the Piven Firm and/or Piven became entitled to a referral fee amounting to 20% of the gross attorneys' fees received by Harwood net of HF's expenses; and

- Piven and/or the Piven Firm were/was entitled to submit a fee application for lodestar and expenses and receive payment, over and above any referral fees owed by Harwood to Plaintiffs, consistent with fees received by other firms at a similar participation level in the litigation.

13.     While neither Defendants nor Plaintiffs memorialized this client referral and fee sharing agreement in an initial writing, this arrangement was confirmed through practice and course of dealing between Plaintiffs and Defendants, conduct on the part of Harwood, and in writings between the parties.  Harwood has never disputed the agreement between the parties as

set forth in paragraph 12, above, and Harwood has even acknowledged in writing the existence of a client referral and fee sharing agreement regarding the approximately $962,302.65 in attorneys' fees received by Harwood and/or to which Harwood became entitled in or about January or February 2012.

**Harwood Breached the Referral and Fee Sharing Agreement**

14.     Harwood repeatedly represented that client referral fees actually paid by Defendants to Plaintiffs in connection with various cases where Plaintiffs and Defendants jointly represented clients of Piven and/or the Piven Firm were in compliance with the agreement set forth in paragraph 12, above, meaning that absent some different express agreement between the parties to the contrary, Piven and/or the Piven Firm were/was paid as a referral fee amounting to 20% of the gross amount in attorneys' fee received by Harwood in connection with the matter net of HF's expenses.   Examples of cases where Plaintiffs had referred to Defendants clients where Defendants acknowledged their obligations under the agreement set forth in paragraph 12, above, and paid to Plaintiffs referral fees represented by Harwood to be in the amount of 20% of the gross amount of attorneys' fees received by Harwood net of expenses include but are not necessarily limited to Household International Shareholder Class and Derivative Litigation, Charter Communications Derivative Litigation, Newmont Mining Derivative Litigation, Conexant ERISA Litigation, and Biolase Technology, Inc. Securities Litigation.   One example where Harwood expressly acknowledged in writing the 20% referral agreement referenced above was in connection with the Veritas Software Corporation Securities Litigation where, on August 15, 2008, Robert I. Harwood wrote to Piven about the referral fees paid to Plaintiffs (for the benefit of Piven) in that matter: "You will see that you received 20% of my net fee to the penny." Indeed, on March 6, 2012, Harwood acknowledged in an email sent by Robert I. Harwood to

Piven that the 20% figure referenced in paragraph 12 above applies to the attorneys' fees received by Harwood in the IPO Litigation (net of HF's expenses) and that Plaintiffs are "entitled" to referral fees from Harwood in an amount calculated using the agreed-to 20% figure referenced above.

15.     Piven and/or the Piven Firm referred to Harwood 27 clients who were shareholders of 26 different companies whose initial public offerings were the subject of securities claims asserted in separate complaints in what became the IPO Litigation.  Upon information and belief, Harwood, on behalf of investors in four other companies' initial public offerings, without involvement of Piven and/or the Piven Firm, filed four other complaints relating to those initial public offerings that became part of the IPO Litigation.  Thus, Harwood initiated claims in 30 of the 309 cases that comprised the IPO Litigation (26 of which were on behalf of clients referred by Piven and/or the Piven Firm).

16.     Upon information and belief, Harwood had no signed written retainer agreement from, no express attorney/client relationship with, and no agreement regarding representation from a plaintiff named in any complaint filed in the IPO Litigation other than possibly plaintiffs named in the 30 complaints referred to in the last sentence in paragraph 15, above or possibly plaintiffs named in other complaints Harwood may have filed regarding the initial public offerings that were the subject of one or more of those 30 cases.  In representing those plaintiffs from whom Harwood possibly had received a signed written retainer agreement or some other writing from the client expressly authorizing Harwood to represent the client, due to the strategy ultimately chosen (after the client referrals which are the subject of this complaint) and employed by lead counsel to prosecute the IPO Litigation, some of the legal work performed by Harwood in the IPO Litigation to represent the plaintiffs in the 30 cases where Harwood did actually file

8

complaints inured to the benefit of all named plaintiffs and putative classes in the cases comprising the IPO Litigation because some of that legal work involved issues that overlapped regarding and/or were common to more than just the 30 cases where Harwood had clients.

17.     Under and consistent with the agreement between the parties, the formula that should be used to determine the amount which Harwood is obligated to pay to Plaintiffs in connection with Piven and the Piven Firm's referral of clients to Harwood in the IPO Litigation, not including interest, costs and/or punitive damages claimed herein, is as follows:

- Attorneys' fees received by Harwood from the IPO Litigation ($962,302.65; "A");

- Total settlement value of the 26 cases where Harwood accepted a client referral from Piven and/or the Piven Firm ($77,902,436.00; "B");

- Total settlement value of all 30 cases filed by Harwood ($88,209,436.00; "C");

- Percentage the total recovery in the 26 Piven/Piven Firm cases is of the total recovery in the 30 cases filed by Harwood – or B divided by C - which is also the percentage of Harwood fees attributable to those 26 cases (88.32%; "X")

- Harwood fees attributable to the 26 cases where Harwood accepted a client referral from Piven and/or the Piven Firm – A multiplied by X, or 88.32% of $962,302.65 ($849,905.70; "Y")

- Amount of referral fee owed by Harwood to Plaintiffs is 20% of Y or $169,981.14.

18.     On or about March 6, 2012, Harwood took the position, in writing, that the above formula was not acceptable and wrote that Plaintiffs were "entitled" to be paid by Harwood a referral fee in the amount determined by the following formula employing the agreed-to 20% figure:

- Total settlement value of the 26 cases where Harwood accepted a client referral from Piven and/or the Piven Firm (B, above) divided by the total $585,000,000 settlement value of the IPO Litigation (($77,902,436.00 / $585,000,000.00 = 13.3%) multiplied by the attorneys' fees received by Harwood from the IPO Litigation (A, above), or 13.3% of $962,302.65 ($127,986.25), multiplied by 20%, resulting in a $25,597.25 client referral fee to which, according to Harwood, Plaintiffs are "entitled."

19.     Unable to convince Robert I. Harwood to honor Harwood's agreement to pay Plaintiffs in accordance with the calculation set forth in paragraph 17 above, in February 2013 Plaintiffs wrote to Harwood demanding that Harwood account for all monies received by Harwood as attorneys' fees in the IPO Litigation asserting that some part of those monies had been and remained the property of Plaintiffs and that the amounts (both disputed and undisputed) claimed by Plaintiffs should be maintained in a trust account and that the amount not in dispute should immediately be paid over to Plaintiffs.    In March 2013, Harwood wrote to Plaintiffs taking the erroneous new position that Plaintiffs were entitled to no referral fees from Harwood in connection with the IPO Litigation and the 26 IPO Litigation cases where Harwood accepted a client referral from Piven and/or the Piven Firm.    Harwood thus refused to pay Plaintiffs the amount to which Harwood had previously conceded in writing Plaintiffs were entitled and further refused to provide an accounting of the monies Plaintiffs asserted was the property of Plaintiffs held by Harwood.    Upon information and belief, Harwood does not hold the property herein alleged to be that of the Plaintiffs in a trust account.

20.     Upon information and belief, Harwood decided to breach the referral and fee sharing agreement between Defendants and Plaintiffs by wrongfully claiming that no such agreement exists between the parties in connection with the IPO Litigation and/or by asserting pretexts for Harwood's refusal to pay Plaintiffs referral fees rightfully due from Harwood to Plaintiffs under the referral and fee sharing agreement between Defendants and Plaintiffs. Defendants knowingly made the decision to unlawfully withhold fees due and owing to Plaintiffs to benefit HF and Robert I. Harwood personally and to harm Plaintiffs.

21.     With respect to the wrongful conduct alleged in this Complaint, each Defendant had actual and/or constructive knowledge of such wrongful conduct; approved and/or directed

the wrongful conduct; and/or benefited from the wrongful conduct with at least reckless indifference to the occurrence or consequences of such conduct.

**COUNT I**

**(Breach of Contract)**

22.     The allegations set forth in paragraphs 1 through 21 are adopted by reference as if set forth fully herein.

23.     Defendants entered into a contract with Plaintiffs as herein alleged.

24.     Defendants owed Plaintiffs a contractual obligation (*i.e.*, a promise) to timely make payment to Plaintiffs on the terms set forth herein.  Defendants' failure to make such payment (for monies due and owing) constituted, and constitutes, a material breach of the contract between Plaintiffs and Defendants as herein alleged.

25.     There was valid consideration for this agreement.  Plaintiffs agreed to perform services, including the referral of Piven Firm clients, that benefited Harwood for which Plaintiffs were promised a specified (or readily determinable) share of any resulting attorneys' fee received by Harwood in connection with the 26 IPO Litigation-related matters for which Plaintiffs referred clients to Defendants.

26.     Defendants' material breach of their legal obligations, as detailed herein, has been without legal justification or excuse.

27.     As a direct result of Defendants' material breaches of the parties' agreement as herein alleged, Plaintiffs have suffered damages.

## COUNT II

### (Promissory Estoppel)

28.     The allegations set forth in paragraphs 1 through 21 are adopted by reference as if set forth fully herein.

29.     Defendants made to Plaintiffs one or more clear, unambiguous promises to pay referral fees in connection with the IPO Litigation and the 26 cases where Harwood accepted a client referral from Piven and/or the Piven Firm.  Defendants should reasonably have expected their promises to induce Plaintiffs' action or forbearance, by referring clients to Defendants and refraining from referring those clients elsewhere or otherwise.

30.     Plaintiffs reasonably relied upon Defendants' promises.

31.     Plaintiffs suffered injury as a proximate result of such reliance.

32.     Defendants expected their promises to induce action, and they did.

33.     Unconscionable injury and injustice can be avoided only by enforcing Defendants' promises.  It would be unconscionable to deny enforcement of Defendants' promises.

## COUNT III

### (Unjust Enrichment)

34.     The allegations set forth in paragraphs 1 through 21 are adopted by reference as if set forth fully herein.

35.     Plaintiffs performed services for and/or provided benefits to Defendants for which Defendants have benefitted without payment to Plaintiffs or otherwise, resulting in Defendants' unjust enrichment.

36.     Defendants were and continue to be enriched at Plaintiffs' expense. It is against equity and good conscience to permit Defendants to retain the benefits conferred upon them by Plaintiffs.

37.     No conduct by Plaintiffs justifies Defendants' unjust enrichment and failure to pay adequate compensation to Plaintiffs for the services performed for and/or benefits provided to Defendants by Plaintiffs.

## COUNT IV

### (Conversion)

38.     The allegations set forth in paragraphs 1 through 21 are adopted by reference as if set forth fully herein.

39.     Defendants are in the possession of monies they have conceded are the property of Plaintiffs and to which Plaintiffs are "entitled."   Despite demand by Plaintiffs, Defendants have refused to pay Plaintiffs and remain in the unauthorized possession of the monies that Defendants have conceded are the property of Plaintiffs to which Plaintiffs are entitled and have acted to exclude Plaintiffs from the lawful possession of their property.

40.     The money improperly withheld by Defendants from Plaintiffs is specifically identifiable and is to be treated in a particular manner.

41.     Defendants have/had control over the monies in their possession that they have conceded is the property of Plaintiffs to which Plaintiffs are entitled.  Defendants had/have a clear, established legal duty to hold the property of Plaintiffs to which Defendants have conceded Plaintiffs are entitled in a trust account and transmit the monies to Plaintiffs upon demand therefor, which demand has been made.

42.     Defendants have or had control over monies Plaintiffs claim to be their property but possession of which Defendants erroneously dispute Plaintiffs are entitled.    Upon information and belief, such disputed amounts are monies held by Defendants for the potential benefit of a third party, namely, Plaintiffs.  Despite demand therefor, Defendants have refused to confirm that such disputed amounts are held in a separate trust account or to otherwise account for such disputed amounts.

43.     Each Defendant had knowledge of, and/or participated in, the conversion alleged herein.

44.     Plaintiffs have been proximately damaged, as further alleged herein, by Defendants' unlawful conversion, including the wrongful withholding of the property Defendants have conceded they maintain possession of despite conceding that the monies are the property of Plaintiffs and to which Plaintiffs are entitled.

**COUNT V**

**(Declaratory Judgment – 28 U.S.C. §§ 2201, *et seq.*)**

45.     The allegations set forth in each of the preceding paragraphs are adopted by reference as if set forth fully herein.

46.     An actual, substantial, present and justiciable controversy exists between Plaintiffs and Defendants with respect to monies owed Plaintiffs pursuant to the parties' referral and fee sharing agreement in connection with the IPO Litigation and the 26 cases where Harwood accepted a client referral from Piven and/or the Piven Firm.

47.     This action presents a legal controversy that is real and not hypothetical; affects one or more parties in a concrete manner so as to provide the factual predicate for adjudication; and presents issues sufficiently clarified for judicial resolution.

48.     Plaintiffs request that this Court declare the rights of the parties, including declaring the nature, substance, and scope of the referral and fee sharing agreement between the Piven Firm (on the one hand) and HF (on the other), as related to the allegations made herein.

49.     Upon declaring the rights of the parties, Plaintiffs request that this Court award all accompanying or additional relief to Plaintiffs consistent with that declaration.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment in favor of Plaintiffs and against each of the Defendants, jointly and/or severally (or individually, as appropriate), as follows:

(A)     On Counts I, II and, as appropriate, V, judgment for compensatory damages in an amount to be determined at trial;

(B)     On Count III, judgment for compensatory damages, or to the extent of Defendants' unjust enrichment, in an amount to be determined at trial;

(C)     On Count IV, judgment for compensatory in an amount to be determined at trial and punitive damages in an amount at least three times the compensatory damages determined or in an amount as otherwise determined at trial;

(D)     On Counts I through, IV and, as appropriate, on Count V, judgment for all costs, pre-judgment and post-judgment interest, litigation expenses recoverable by law, and reasonable attorney's fees recoverable by law incurred by Plaintiffs in this matter;

(E)     On Counts I through, IV and, as appropriate, on Count V, ordering an accounting as to all attorneys' fees received by HF in connection with the IPO Litigation;

(F)     On Count V, declaring the rights of the parties to this action, including declaring the nature, substance, and scope of the referral and fee sharing agreement between Plaintiffs (on the one hand) and Defendants (on the other), as related to the allegations made herein; and

(G)     Ordering such other and further relief as this Court deems just and proper.

Dated: New York, New York
        August 18, 2014

                                        BROWER PIVEN,
                                         A Professional Corporation

                                        _____
                                        Brian C. Kerr
                                        475 Park Avenue South, 33rd Floor
                                        New York, NY 10016
                                        Telephone:  (212) 501-9000
                                        Fax:  (212) 501-0300
                                        E-mail: kerr@browerpiven.com

                                        *Attorney for Plaintiffs Charles J. Piven
                                         and Brower Piven, A Professional Corporation*