UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| CHARLES J. PIVEN and<br>BROWER PIVEN, A PROFESSIONAL<br>CORPORATION<br><br>        Plaintiffs,<br><br>        v.<br><br>HARWOOD FEFFER LLP and<br>ROBERT I. HARWOOD<br><br>        Defendants. | **Case No. 14-cv-06601-LAK** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY OLIMPIO LEE SQUITIERI AND SQUITIERI & FEARON, LLP**

Plaintiffs Charles J. Piven ("Piven") and Brower Piven, A Professional Corporation ("Brower Piven," with Piven, "Plaintiffs"), by undersigned counsel, submit this memorandum in support of their motion to disqualify counsel for Harwood Feffer LLP and Robert I. Harwood (collectively, "Defendants").

## INTRODUCTION

Defendants are represented in this action by Olimpio Lee Squitieri ("Squitieri") and the law firm of Squitieri & Fearon, LLP (collectively with Squitieri, "Defense Counsel"). As Plaintiffs have repeatedly told Defense Counsel, and as they should well know, there is a clear conflict of interest that prevents them from appearing in this matter as the same attorney and the same law firm previously rendered legal advice to Plaintiffs in a substantially related matter in direct violation of Disciplinary Rule 5-108 of the New York Lawyer's Code of Professional Responsibility ("NYRPC") ("Conflict of Interest – Former Client"). As set forth below, the

1

Court should grant Plaintiffs' motion and immediately disqualify Defense Counsel from representing Defendants in this action.

## FACTUAL BACKGROUND

### Defense Counsel's Prior Representation of Plaintiffs

In 2003, the law firm of Wolf Haldenstein Adler Freeman & Herz LLP ("WHAFH") stopped paying referral fees owed to Plaintiffs, and made it clear that any future referral fees would also not be paid. One of the underlying cases at issue was *In re Initial Public Offering Secs. Litig.*, 21 MC 92 (SAS) (S.D.N.Y.) ("IPO Litigation"). In anticipation of having to file a lawsuit against WHAFH, in or about January 2004, Defense Counsel agreed to represent Plaintiffs and rendered legal advice to Plaintiffs relating to claims for monies due and owing or that would become due and owing ("WHAFH Claims").

After telephone communications between Plaintiff Piven and Squitieri, during which Piven, on behalf of Plaintiffs, shared with Defense Counsel Plaintiffs' reservations about filing a lawsuit against WHAFH, including why Plaintiffs had such reservations, the consequences that could result from filing such a lawsuit, and what tactics Plaintiffs were concerned WHAFH might employ to defend such a lawsuit, on January 23, 2004, Defense Counsel sent Plaintiffs, addressed to Piven, ten reported opinions that covered issues discussed by Squitieri and Piven.

On January 28, 2004, Piven and Squitieri exchanged emails wherein Plaintiffs' concerns associated with bringing the WHAFH Claims were discussed in significant detail.

On March 10 and 11, 2004, Piven, on behalf of Plaintiffs, and Squitieri exchanged further email communications surrounding the anticipated WHAFH Claims.

On January 17, 2005, Piven, on behalf of Plaintiffs, sent to Squitieri an "EXTREMELY CONFIDENTIAL" draft complaint that contained very confidential information.

On February 9, 2005, Squitieri, returned to Plaintiffs, by an email addressed to Piven, the draft complaint with Squitieri's hand-written comments thereon.

There were a few more communications between Defense Counsel and Plaintiffs relating to the WHAFH Claims thereafter, but at some point thereafter, the attorney-client relationship between Plaintiffs and Defense Counsel relating to the WHAFH Claims terminated.

On or about December 5, 2008, Plaintiffs, by their counsel, the law firm of Zuckerman Spaeder LLP ("Zuckerman") filed a lawsuit in the Southern District of New York asserting the WHAFH Claims. *See Charles J. Piven, et al. v. Wolf Haldenstein Adler Freeman & Herz LLP*, *et al*. No. 08 CIV 10578 (RJS) ("WHAFH Litigation"). That lawsuit was ultimately resolved.

### Defense Counsel Represents Harwood in Connection with the Current Dispute

In early 2012, when the attorneys' fees were distributed in the IPO Litigation, Defendants refused to pay Plaintiffs the fees owed pursuant to their fee-sharing agreements. Zuckerman assisted Plaintiffs in attempting to reach a resolution short of litigation.

On February 15, 2013, Zuckerman sent a letter to Harwood. On February 27, 2013, Defense Counsel responded on behalf of Harwood and stated that a response to the February 15 correspondence would be forthcoming.

Thereafter, on March 11, 2013, Defense Counsel delivered a letter to Zuckerman that made clear no resolution was likely because, contrary to an email from Harwood to Plaintiffs on March 6, 2013 acknowledging that Plaintiffs were "entitled" to some referral fees from Defendants, Defense Counsel indicated that Plaintiffs were entitled to no referral fees from Harwood.  The March 6, 2013 letter employed tactics exactly like those Piven had confided to Defense Counsel in 2004 they were concerned would be employed by WHAFH in defending the WHAFH Claims.

On or about April 11, 2013, Piven advised Defense Counsel that they were subject to a conflict of interest by virtue of Defense Counsel's representation of Plaintiffs in connection with the WHAFH Claims. Defense Counsel remained as Harwood's attorney nonetheless.

On October 28, 2013, Zuckerman sent Defense Counsel a letter, a copy of which (without exhibits thereto) is attached as Exhibit 1 to the Declaration of Charles J. Piven ("Piven Declaration") filed simultaneously herewith. The letter (which was "not written for purposes of settlement . . . and is not intended to be subject to any settlement privilege") states:

> As I have stated in our prior conversations, your representation of Harwood Feffer LLP and Rob Harwood (together, your "Clients") in this matter is improper because this matter is substantially related to a matter in which you previously represented my client Charles Piven, and your Clients' interests in this matter are materially adverse to Mr. Piven's interests. Mr. Piven has not and will not consent to your representation of your Clients in this matter. My understanding is that Mr. Piven is extremely disappointed that you undertook this representation, that you threatened to sue Mr. Piven in this matter, and that you continue to advocate for your Clients notwithstanding your obvious conflict.
>
> You have indicated that you do not recall the details of your prior representation of Mr. Piven. I am happy to provide those details. In or about 2004, you advised Mr. Piven regarding his then-contemplated claims against the law firm Wolf Haldenstein Adler Freeman & Herz LLP ("WHAFH"), after having detailed discussions with Mr. Piven regarding his claims. Those discussions addressed Mr. Piven's concerns about possible future claims he might have to bring against WHAFH in connection with the IPO Litigation, and possible theories under which WHAFH might assert a counterclaim against Mr. Piven. At that time, you provided Mr. Piven with the results and analysis of your legal research regarding the enforceability of referral fee arrangements under New York law, and provided detailed comments on a confidential (and extremely sensitive) draft letter and Complaint that Mr. Piven shared with you to facilitate your advice to him. I have not attached any of the confidential communications between you and Mr. Piven reflecting the legal advice you provided to him regarding his disputes with WHAFH, because those matters remain confidential and subject to Mr. Piven's claim of attorney—client privilege and other applicable privileges.

On October 28, 2013, Defense Counsel wrote an email to Zuckerman questioning the nature and extent of the prior representation by Defense Counsel of Plaintiffs, stating that "you [are] asking me to take your word for it and resign from *a representation that will be hard for*

4

*the client to duplicate*."[1]  On October 31, 2013, Zuckerman again wrote to Defense Counsel (Piven Decl. at Ex. 2) explaining that Defense Counsel should not continue to represent Defendants in connection with these matters. As Zuckerman pointed out in the letter, "the comments to Rule 1.9 of the New York Rules of Professional Conduct expressly state: 'A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter.'"  *See* Comment [3] to NYRPC DR 1.9.[2]

In response, Defense Counsel asked whether they could send the October 31, 2013 letter to Robert I. Harwood. Zuckerman responded in the negative because information included therein was "covered by the attorney-client privilege arising from your prior representation of Mr. Piven."  To that, Defense Counsel responded that they "don't necessarily agree but … won't disclose until you are given adequate notice."

On November 1, 2013, Defense Counsel sent an email to Zuckerman stating that Zuckerman should send the cases sent by Defense Counsel to Piven in January 2004 so "Squitieri can make an informed decision about [Plaintiffs'] position."  The next day, on November 4, 2013, Zuckerman responded to Defense Counsel's November 1, 2013 email stating: "Please be advised that I will not respond to further communications from you regarding the propriety of your representation of Mr. Harwood and his firm in connection with Mr. Piven's claim for referral fees in the *IPO Litigation*."

---

[1] Of course it would be "hard" to duplicate the representation, even in this simple contract/tort action. Defense Counsel is in possession of confidential information obtained as a result of their prior representation of Plaintiffs, and there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the clients' position in the subsequent matter. *See* Comment [3] to NYRPC Disciplinary Rule 1.9.

[2] Further, "[a] conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." *Id.*

On August 18, 2014, Plaintiffs commenced this action. Thereafter, following a telephone call from Squitieri on September 2, 2014, undersigned counsel spoke with Squitieri about Defendants' desire for more time to answer or move to dismiss the Amended Complaint. Undersigned counsel, aware of the matters discussed above, expressed surprise to Squitieri that Defense Counsel intended to represent Defendants in this litigation. In response, Squitieri stated words to the effect that Defense Counsel would continue to represent Defendants until the Court rules on the motion to disqualify Squitieri knew would be coming. This is that motion.

## ARGUMENT

According to the NYRPC DR 5-108 A:

> a lawyer who has represented a client in a matter shall not, *without consent of the former client after full disclosure*:
>
> 1. Thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.
>
> 2. Use any confidences or secrets of the former client . . . .

NYRPC DR 5-108 A.

Plaintiffs have never given Defense Counsel informed consent to represent Defendants. As indicated above, the WHAFH Claims are substantially related and very similar to the claims in this action, and Defense Counsel have employed confidences and secrets of Plaintiffs, obtained through their prior representation of Plaintiffs in connection with the WHAFH Claims to the intended advantage of Defendants and the intended disadvantage of PlaintiffsDefense Counsel knows that this action and the WHAFH Litigation are substantially related in that both relate to claims surrounding a lawyer and his law firm's failure to pay referral fees to Plaintiffs and both involve the IPO Litigation. It is presumed that in the course of their prior representation of Plaintiffs, Defense Counsel had access to, or were likely to have had access to,

privileged information relevant to the claims in this action. Defense Counsel's representation of the Defendants raises the possibility that in the present matter they will improperly continue to use confidences gained in the prior representation of Plaintiffs to the detriment of those former clients. There is risk that Defense Counsel might possess unconscious impressions from Plaintiffs' confidences shared in connection with the WHAFH Claims that have influenced or could influence their advice to Defendants.

In such circumstances, the law requires that Defense Counsel be disqualified from representing Defendants in this action. *See Tufamerica, Inc. v. Codigo Music LLC*, No. 11 Civ. 1434 (ALC)(DCF), 2013 U.S. Dist. LEXIS 65777, at *6-*7 (S.D.N.Y. May 7, 2013) ("Craft's motion falls into the second category, that of safeguarding client confidences in a successive representation. Where successive representation is alleged, disqualification is warranted where: (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.' **Where the second element is satisfied, there is an <u>irrebuttable</u> presumption that the third element is also satisfied**.") (internal citations omitted); *id.* at *9-*10 ("Only two readily identifiable situations raise the specter that the litigation will be tainted if one side's counsel is permitted to remain in the case: when the challenged attorney is concurrently representing adverse interests so that his vigor in pursuing the interests of one of them is questionable, **or when the attorney's successive representation of adverse interests raises the possibility that in the present matter he will improperly use confidences gained in the prior representation to the detriment of his former client**.") (citations omitted; emphasis added); *id.* at

7

\*10-\*11 ("Despite the high standard of proof required, and restraint urged before imposing such a 'drastic measure,' when faced with questions of disqualification, '***any doubt is to be resolved in favor of disqualification***.'") (citations omitted); *id.* at \*16-\*17 ("Under these circumstances, there is a strong possibility that confidences were shared. ***Whether or not confidences were shared or either party recalls the confidences, the Court cannot risk the chance of Talcott's unconscious impressions might be influenced by Craft's confidential information***."); *Tiuman v. Canant*, No. 92-5813, 1994 U.S. Dist. LEXIS 6626, at \*8, \*10 (S.D.N.Y. May 19, 1994) ("[B]ecause Canant has established that he was a former client of Burstein and that there is a substantial relationship between the prior and present lawsuits, the law need not inquire whether Burstein in fact received confidential information, because ***the receipt of such information is presumed***"; "Use of Canant's confidences would give the plaintiffs an unfair advantage in this substantially related, subsequent representation and would threaten the integrity of these proceedings. Thus, the Court finds that disqualification is an appropriate remedy.").[3]

---

[3] *See also United States v. Galestro*, No. 06-Cr-285, 2006 U.S. Dist. LEXIS 57416, at \*7-\*8 (E.D.N.Y. Aug. 16, 2006) ("Where the attorney's conflict of interest involves an attorney's conflicting duties of loyalty to a defendant and a former client, the court may disqualify an attorney ***in order 'to avoid the prospect*** of a conflict of interest which ***potentially could*** confer an unfair advantage on [the defendant]** . . . or adversely affect [the other client's] interests.' 'The principle is well established that an attorney should be disqualified from opposing a former client if during his representation of that client he obtained information relevant to the controversy at hand.'") (internal citations omitted); *id.* at \*10-\*11 ("I find that Levitt and Kaizer have a serious potential conflict in Maggio's previous retention of them and their current representation of Galestro. As the defense concedes, Levitt and Kaizer received confidences from Maggio during their representation of him. Maggio does not consent to their representation of Galestro or to their use of his confidences, which are material to the prosecution of Galestro."); *United States v. Salvagno*, No. 5:02-CR-51, 2003 U.S. Dist. LEXIS 4145, at \*18 (N.D.N.Y Feb. 28, 2003) ("'where it can reasonably be said that in the course of the former representation the attorney might have acquired the information related to the subject matter of his subsequent representation, it is the court's duty to order the attorney disqualified.'") (internal citations omitted); *Moss v. Moss Tubes*, No. 96-CV-1407, 1998 U.S. Dist. LEXIS 14656, at \*16 (N.D.N.Y Sept. 5, 1998) ("'***The attorney need not have actually obtained confidential information; it is sufficient if the attorney might reasonably have acquired information related to the subsequent representation.*** ' 'Thus, ***where*** 'it can reasonably be said that in the course of the former representation ***the attorney might have acquired information related to the subject matter of his subsequent representation,' it is the court's duty to order the attorney disqualified***.") (internal citations omitted); *FDIC v. Raffa*, No. 3:94CV21 (AVC), 1995 U.S. Dist. LEXIS 5352, at \*8 (D. Conn.

**CONCLUSION**

In light of the foregoing, it is clear that Defense Counsel have wrongly refused to remove themselves from their current representation of Defendants in these proceedings and should never have placed Plaintiffs in the position to be forced to file this motion. Thus, the only avenue to prevent Defense Counsel, who insist on continuing to represent Defendants despite overwhelming evidence of the impropriety of doing so, is for this Court to intervene and force Defense Counsel to withdraw by ordering their disqualification.

Dated: New York, New York
October 2, 2014

                BROWER PIVEN
                 A Professional Corporation

                /s/ Brian C. Kerr
                Brian C. Kerr
                475 Park Avenue South, 33rd Floor
                New York, NY 10016
                Telephone: (212) 501-9000
                Fax: (212) 501-0300
                E-mail: kerr@browerpiven.com

                *Attorney for Plaintiffs Charles J. Piven*
                *and Brower Piven, A Professional Corporation*

---

Mar. 17, 1995) ("In sum, the FDIC has successfully shown that they are a former client of Raymond Devlin, that there is a substantial relationship between his prior and present representations, and that Devlin likely had access to relevant privileged materials. For these reasons, the FDIC's Motion for Disqualification is GRANTED.").

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2014, I served a true and correct copy of the foregoing document(s) on Defendants' counsel, Squitieri & Fearon, LLP, by causing copies to be sent by email to:

Lee Squitieri
Lee@sfclasslaw.com

                                               /s/ Brian C. Kerr
                                               Brian C. Kerr